UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
OWEN CLARKE,                                                 :

            Petitioner,                                    :          REPORT AND
                                                         RECOMMENDATION
            -v.-                                               :          09 Civ. 8218 (WHP)(GWG)

BRUCE YELLECH,                                               :

                Respondent.                                :
------------------------------------------------------------------------x

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      Owen Clarke seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 following his

conviction for Manslaughter in the First Degree in New York County Supreme Court on the

ground that he received ineffective assistance of counsel at his trial.  For the reasons stated

below, the petition should be denied.

I.        BACKGROUND

          A.      Indictment and Trial Evidence

      On November 23, 1993, a grand jury charged Clarke with Murder in the Second Degree

in violation of New York Penal Law § 125.25(1) for the shooting death of Keith Hayes on May

13, 1991.  See Indictment No. 11467/93 (annexed as Ex. A to Answer and Appendix Opposing

Petition for a Writ of Habeas Corpus, filed Feb. 19, 2010 (Docket # 9) ("Answer")).  In 2004, the

authorities located Clarke in Jamaica where he had fled after the shooting.  See Affirmation in

Response to Defendant's Motion to Vacate Judgment (annexed as Ex. C(1) to Answer)

("People's Aff.") ¶ 5.[1]  Clarke was extradited and brought to trial in February 2006.  Id.

---

[1] The Court has added numbers to exhibit letters where necessary to indicate a particular
document among multiple documents in the exhibit.

The trial testimony reflected that the victim, Hayes, worked for Clarke selling drugs. (See Wilson: Tr. 210-11).[2]  After midnight on May 13, 1991, Hayes was speaking with Lennwes Meyers in the hallway of his building located at 121 Saint Nicholas Avenue in Manhattan. (See Meyers: Tr. 449, 451-52).  Hayes told Meyers that he had spent $30 from the proceeds of a recent drug sale on food and cigarettes even though he owed that money to Clarke.  (See Meyers: Tr. 452).

After their conversation, Meyers saw Clarke drive up in a blue pick-up truck and suggested that Hayes speak with him.  (See Meyers: Tr. 453-55).  After Hayes walked over to Clarke, their conversation quickly escalated, and the two began fighting.  (See Meyers: Tr. 461-64).  Clarke testified that Hayes regularly failed to pay him the full proceeds from drug sales, and that he was unsatisfied with Hayes's excuse that evening.  (Clarke: Tr. 764-65).  Clarke also testified that he had "used cocaine" ten minutes before his encounter with Hayes.  (Clarke: Tr. 765-66).  Hayes pinned Clarke against the truck in a wrestling hold while Clarke struggled to get free.  (See Meyers: Tr. 464).  Hayes finally released Clarke after he yelled "let me go."  Id. After the struggle, Clarke's uncle, named Gary, arrived at the scene having exited Hayes's building where he also lived.  (See Meyers: Tr. 472).  Clarke walked out of sight around the corner to 116th Street, where Gary followed him.  (See Meyers: Tr. 474).

Meyers along with two other eyewitnesses, Susie Wilson and Elaine Boynes, testified that after five minutes, Clarke came back around the corner with a gun in his hand.  (See Meyers:

---

[2] "Tr" refers to the transcript of the trial, which began on February 27, 2006 and concluded on March 6, 2006.  See Transcript of Trial, filed Feb. 19, 2010 (Docket ## 7-8).  "S" refers to the sentencing hearing held in this case on April 15, 2006.  See Sentencing Hearing, filed Feb. 19, 2010 (Docket # 8).

Tr. 512; Wilson: Tr. 237; Boynes: Tr. 564).  Clarke approached Hayes, and when standing approximately six feet away fired once at the ground and then twice while aiming at Hayes hitting him in the thigh and stomach.  (See Boynes: Tr. 564-71; Wilson: Tr. 239-40; Meyers: Tr. 480).  After shooting Hayes, Clarke fled the scene.  (See Boynes: Tr. 571-72).

Clarke testified that he acted in self-defense.  He stated that he remained around the corner with his uncle and a man named Sheldon when Hayes approached them.  (Clarke: Tr. 769).  After Sheldon handed Clarke a gun, he pointed it at Hayes and instructed him to stop walking.  (See Clarke: Tr. 769-70).  Clarke felt "threatened" and believed that Hayes "at that time . . . had something in his jacket" and that "he was going to do harm to me."  (Clarke: Tr. 770).  Clarke then fired the gun at the ground, see id., but Hayes continued to walk towards him, (Clarke: Tr. 771).  Clarke then "raised [his] hands slightly to fire at [Hayes's] foot or his leg and . . . fired the weapon."  Id.  Though he did not intend to kill Hayes, Clarke was close enough to Hayes to aim at him and was in fact "aiming for his leg" when he shot the gun. (Clarke: Tr. 789).

Hayes was later taken to St. Luke's Hospital where he died from the gun shot wounds.  (See Smith: Tr. 171, 173-74).  After the incident, Clarke fled to Jamaica where he lived until his extradition in 2004.  See People's Aff. ¶ 5.

B.    Charging Conference and Jury Verdict

Prior to closing arguments, Justice Solomon held a charging conference during which he asked both sides if they wished to submit lesser included offenses to the jury.  (See Tr. 882).  The prosecution requested a charge for Manslaughter in the First Degree (see Tr. 883), defined under N.Y.P.L. § 125.20(1) as an act committed with the "intent to cause serious physical injury to another person" thereby causing "the death of such person or of a third person."  Defense

counsel objected, stating "[t]he People's theory is he shot to kill. That's their theory, lets go with it." (Tr. 883). Justice Solomon found there was sufficient evidence to sustain a lesser included charge of Manslaughter in the First Degree and that he would submit it to the jury. (See Tr. 883-84). Defense counsel then proposed Assault in the First Degree as a lesser included offense, id., but later withdrew the request (see Tr. 915). In addition, Justice Solomon agreed to give both a justification instruction and an intoxication instruction to the jury. (Tr. 887, 908).

The jury acquitted Clarke of Murder in the Second Degree but found him guilty of Manslaughter in the First Degree. (See Tr. 1048). On April 25, 2006, Justice Solomon sentenced Clarke as a second felony offender to eight to sixteen years' imprisonment. (See S. 8).

     C.     <u>State Appeals</u>

          1.     <u>Clarke's § 440.10 Motion</u>

On March 13, 2007, Clarke, represented by new counsel, filed a motion under New York Criminal Procedure Law § 440.10 to vacate the judgment on the ground that his trial counsel had been ineffective for not requesting a second-degree manslaughter charge as a lesser included offense and for not objecting to the inclusion of the first-degree manslaughter charge on statute of limitations grounds. See Notice of Motion, filed Mar. 13, 2007 (annexed as Ex. B(1) to Answer); Affirmation, dated Mar. 12, 2007 (annexed as Ex. B(2) to Answer) ("Pollack Aff.") ¶ 3; Memorandum of Law in Support of Defendant Owen Clarke's C.P.L. § 440.10 Motion to Vacate His Conviction, filed Mar. 13, 2007 (annexed as Ex. B(4) to Answer) ("Pet. § 440.10 Br."), at 1-2. In the memorandum of law accompanying the motion, Clarke argued that trial counsel's decision was premised on a "misunderstanding of the law" and was not a strategic decision. Pet. § 440.10 Br. at 12-13. Clarke included as support an affirmation from Clarke's

appellate counsel in which she alleged that during a conversation between the two attorneys, trial counsel "never indicated that she ever considered seeking" submission of second-degree manslaughter as a lesser included offense.  Pollack Aff. ¶ 3.  Moreover, appellate counsel averred that trial counsel "told me that she did not request the lesser included offense . . . because it 'never crossed [her] mind'" and that "she indicated to me that she was not aware that second-degree manslaughter was a lesser included offense of second degree murder, and asked me for a case citation on the point."  Id.  Clarke argued that the omission was thus "no strategic choice, but rather was based on her misunderstanding of the law."  Pet. § 440.10 Br. at 13.

  Clarke's trial attorney, Lori Cohen, submitted two affidavits in response contradicting Clarke's characterization of her representation.  In her first affidavit, dated March 12, 2007, and submitted presumably as part of Clarke's § 440.10 motion, she averred that "I did not request second-degree manslaughter because, in my view at the time, it was not appropriate given the facts and defense in the case."  Affidavit of Lori Cohen, dated Mar. 12, 2007 (annexed as Ex. B(3) to Answer) ("First Cohen Aff.") ¶ 4.  She elaborated further in her second affidavit, dated June 15, 2007, that requesting a second-degree manslaughter charge interfered with the defense theory she and Clarke had agreed upon, which was "to win the case outright."  Affidavit of Lori Cohen (annexed as Ex C(2) to Answer) ("Second Cohen Aff.") ¶ 1.  She stated that Clarke "was adamant about not trying the case for a less serious, lesser charge" which was reflected in the overall defense strategy pursued in this case, including Clarke's testimony that he shot Hayes intentionally in self-defense.  Id. ¶¶ 1-3, 16.  Cohen asserted that the decision was driven by strategic considerations and disputed appellate counsel's characterization of her performance.  She explained that any discrepancy between her affirmations and the conversation

was due to the fact that she had not reviewed the case file prior to speaking with appellate

counsel.  Id. ¶¶ 11-15.  Cohen also responded that she was aware that second-degree

manslaughter "could be a lesser included of Intentional Murder," but that in her conversation

with appellate counsel she was "wondering aloud about whether it was an appropriate lesser

included under these circumstance – given that Mr. Clarke had testified he acted intentionally."

Id. ¶ 9 (emphasis in original).  The relevant portion of the Manslaughter in the Second Degree

charge requires that the defendant act "recklessly."  See N.Y.P.L. § 125.15(1).

In a decision and order dated August 14, 2007, Justice Solomon denied Clarke's

section 440.10 motion, finding Cohen's explanation of her representation to be credible.  See

Decision and Order/Indictment 11467-93 (annexed as Ex. E to Answer), at 3-4.  Justice Solomon

concluded that the decision not to seek the lesser included charge was proper because, in light of

Clarke's testimony that he intentionally shot Hayes in self-defense, "[n]o reasonable view of the

evidence supported a charge of Manslaughter in the Second Degree under the theory that

defendant acted recklessly."  Id. at 3-4.

On November 8, 2007, the Appellate Division, First Department denied Clarke leave to

appeal.  See Certificate Denying Leave, filed Nov. 8, 2007 (annexed as Ex. H to Answer).

2.     Direct Appeal

Following denial of his section 440.10 motion, Clarke filed a direct appeal arguing that

his sentence was excessive and that he received ineffective assistance of counsel.  See Brief for

Defendant-Appellant, filed Dec. 10, 2007 (annexed as Ex. J to Answer), at 12-21.  On October

16, 2008, the Appellate Division affirmed the conviction, holding "that defendant has failed to

demonstrate 'the absence of strategic or other legitimate explanations' . . . for counsel's actions,

and that defendant received effective assistance under the state and federal standards." People v.
Clarke, 55 A.D.3d 370, 370 (1st Dep't 2008) (citing People v. Benevento, 697 N.E.2d 584
(1988); Strickland v. Washington, 466 U.S. 668 (1984)).  The appellate court further found:

> The trial record supports the conclusion that defense counsel had chosen an
> "all-or-nothing" strategy in that she opposed the prosecutor's request to charge
> first-degree manslaughter, and she withdrew her request to submit first-and
> second-degree assault.  The fact that defense counsel requested an intoxication
> charge is consistent with such a strategy, since intoxication goes to the issue of
> intent.  Defendant would have been entitled to a complete acquittal if the jury
> found that he was too intoxicated to form an intent to kill or seriously injure the
> victim, and the record supports the inference that this was counsel's goal.

Id. (citation omitted).  The New York Court of Appeals denied Clarke leave to appeal on
January 27, 2009.  People v. Clarke, 11 N.Y.3d 923 (2009).

  D. Habeas Petition

  On September 28, 2009, Clarke, proceeding pro se, filed the instant petition seeking a
writ of habeas review.  See Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a
Person in State Custody, filed Sept. 28, 2009 (Docket # 2) ("Pet.").  In a memorandum attached
to his petition, he argues that he was denied effective assistance of counsel when defense counsel
did not request the lesser offense of second-degree manslaughter given that the trial court ruled
that it would submit the lesser included offense of first-degree manslaughter to the jury.  See
Memorandum (annexed to Pet.) ("Pet. Mem."), at 1.  Clarke contends that trial counsel's
omission was due to incompetence and a misunderstanding of  applicable law, and thus was not a
strategic decision.  Id. at 1-2.  He further argues that such incompetence was prejudicial as "there
was a very real and []reasonable possibility that the jury would have convicted [Clarke] of
Second Degree Manslaughter."  Id. at 1.

II. APPLICABLE LAW

A.    The Legal Standard for Petitions Brought Pursuant to 28 U.S .C. § 2254

A petition for a writ of habeas corpus may not be granted with respect to any claim that has been "adjudicated on the merits" in the state courts unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For a claim to be "adjudicated on the merits" within the meaning of section 2254(d), it must "finally resolv[e] the parties' claims, with res judicata effect," and it must be "based on the substance of the claim advanced, rather than on a procedural, or other, ground."  Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001) (citations omitted).  As long as "there is nothing in its decision to indicate that the claims were decided on anything but substantive grounds," a state court decision will be considered to be "adjudicated on the merits" even if it fails to mention the federal claim and no relevant federal case law is cited.  Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001); accord Rosa v. McCray, 396 F.3d 210, 220 (2d Cir.) ("This standard of review applies whenever the state court has adjudicated the federal claim on the merits, regardless of whether the court has alluded to federal law in its decision."), cert. denied, 546 U.S. 889 (2005).  Moreover, a state court's "determination of a factual issue" is "presumed to be correct," and that presumption may be rebutted only "by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to" clearly established federal law only "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of

8

[the Supreme Court] and nevertheless arrives" at a different result.  Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  Habeas relief is available under the "unreasonable application" clause only "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  Id. at 411.  Rather, the state court's application must have been "objectively unreasonable" – a standard that "demands that state-court decisions be given the benefit of the doubt."  Renico v. Lett, 130 S. Ct. 1855, 1862 (2010) (citation and internal quotation marks omitted).  The "determination of whether a court has unreasonably applied a legal standard depends in large measure on the specificity of the standard in question."  Brisco v. Ercole, 565 F.3d 80, 89 (2d Cir.), cert. denied, 130 S. Ct. 739 (2009). "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations" inasmuch as the application of a general standard to a specific case "can demand a substantial element of judgment."  Yarborough v. Alvarado, 541 U.S. 652, 664 (2004); accord Brisco, 565 F.3d at 90 (court applying a "fact-dependent standard . . . to the facts of a specific case is . . . entitled to significant 'leeway' when [a habeas court] review[s] its decision for reasonableness" (quoting Yarborough, 541 U.S. at 664)).

Only holdings of the Supreme Court are considered for purposes of determining "[c]learly established federal law."  Rodriguez v. Miller, 537 F.3d 102, 106 (2d Cir. 2008) (citation omitted).  Thus, "[n]o principle of constitutional law grounded solely in the holdings of the various courts of appeals or even in the dicta of the Supreme Court can provide the basis for

habeas relief." Id. at 106-07 (citation omitted).  Where there is "[n]o holding" from the Supreme

Court on the question presented, Carey v. Musladin, 549 U.S. 70, 77 (2006), or where Supreme

Court cases "give no clear answer" to the question presented in the petition, Wright v. Van

Patten, 552 U.S. 120, 126 (2008) (per curiam), a state court's decision cannot be contrary to or

an unreasonable application of clearly established federal law.

  B.   Law Governing Claims of Ineffective Assistance of Counsel on Federal Habeas
       Review

_____To show ineffective assistance of counsel, a petitioner must satisfy both prongs of the

two-part test articulated in Strickland v. Washington, 466 U.S. 668, 687-96 (1984).  The

Strickland test has been characterized as "rigorous" and "highly demanding."  Pavel v. Hollins,

261 F.3d 210, 216 (2d Cir. 2001) (citations omitted); accord Bell v. Miller, 500 F.3d 149, 155

(2d Cir. 2007) (comparing a successful ineffective assistance of counsel habeas claim to

"thread[ing][a] needle").  To meet the Strickland standards, a petitioner must show (1) "that

counsel's representation fell below an objective standard of reasonableness," 466 U.S. at 688,

and (2) "any deficiencies in counsel's performance" were "prejudicial to the defense," id. at 692;

accord Rosario v. Ercole, 601 F.3d 118, 123 (2d Cir. 2010).

    In evaluating the first prong – whether counsel's performance fell below an objective

standard of reasonableness – "judicial scrutiny . . . must be highly deferential," and the petitioner

"must overcome the presumption that, under the circumstances, the challenged action might be

considered sound trial strategy."  Bell v. Cone, 535 U.S. 685, 698 (2002) (quoting Strickland,

466 U.S. at 689) (internal quotation marks and bracketing omitted). "[F]or purposes of effective

assistance, not every possible motion need be filed, but rather, only those having a solid

foundation."  United States v. Nersesian, 824 F.2d 1294, 1322 (2d Cir.) (citing United States v.

Afflerbach, 754 F.2d 866, 870 (10th Cir.), cert. denied, 472 U.S. 1029 (1985)), cert. denied, 484 U.S. 958 (1987).

To satisfy the prejudice requirement, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694; accord Lynn v. Bliden, 443 F.3d 238, 247-48 (2d Cir. 2006), cert. denied, 549 U.S. 1257 (2007).

The Second Circuit has summarized the application of the Strickland test on habeas review as follows:

> When a federal court reviews a state court decision under § 2254, "[t]he question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable – a substantially higher threshold."  Knowles v. Mirzayance, --- U.S. ----, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).  The Strickland standard itself is a "general standard," meaning its application to a specific case requires "a substantial element of judgment" on the part of the state court.  Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L.Ed.2d 938 (2004); accord Knowles, 129 S. Ct. at 1420.  Thus, state courts are granted "even more latitude to reasonably determine that a defendant has not satisfied that standard."  Knowles, 129 S. Ct. at 1420.  In order to prevail, a petitioner must overcome that substantial deference and establish that the state court's decision on ineffective assistance was contrary to, or an unreasonable application of, Strickland.

Rosario, 601 F.3d at 123.

III.    DISCUSSION

Clarke contends that trial counsel's failure to request a lesser included offense was not a strategic decision, but a mistake premised on counsel's misunderstanding of the law.  Pet. Mem. at 1-2.  As support, he cites to portions of the charging conference in which trial counsel stated that she could not recall what the section number was for first degree assault.  Id. at 2.

11

Clarke's argument fails because in essence his claim simply disputes the state court's factual finding that trial counsel's decision not to seek the lesser charge was a tactical decision, and Clarke has not met the standards of section 2254 for setting aside that finding.  The Appellate Division concluded that trial counsel chose not to request the second-degree manslaughter charge because the defense "had chosen an 'all-or-nothing' strategy."  Clarke, 55 A.D.3d at 370 (citation omitted).  Clarke has not shown that this was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  See generally Wood v. Allen, 130 S. Ct. 841, 849-50 (2010) (no ineffective assistance where "state-court record can fairly be read to support" the state court's "factual determination that counsel's failure to pursue or present evidence of [defendant's] mental deficiencies was not mere oversight or neglect but was instead the result of a deliberate decision to focus on other defenses").  Under 28 U.S.C. § 2254(e)(1), this finding is "presumed to be correct" and may be rebutted only "by clear and convincing evidence."  Clarke has not met the burden of showing "by clear and convincing evidence" that the state courts' determination was incorrect.

 Indeed, at no point does Clarke refute or even acknowledge trial counsel's sworn statements that (1) the decision was a strategic choice consistent with the all-or-nothing strategy pursued in this case; (2) it was her "advice to [Clarke], not to attempt an alternative theory of defense argument" because it could "confuse the jury" and undermine the primary defense argument; and (3) Clarke "was adamant about not trying the case for a less serious, lesser charge."  Second Cohen Aff. ¶¶ 1-2, 13.  Likewise, the trial record reflects that the defense theory at trial was that Clarke did not shoot Hayes with the intent of killing him but nevertheless

12

shot him intentionally in self-defense.  This is reflected in Clarke's own testimony (see Clarke:

Tr. 788-89), and is consistent with the trial counsel's objection to charging first-degree

manslaughter as a lesser included offense (see Tr. 883).

Clarke offers no explanation of why pursuit of this strategy would be objectively

unreasonable.  Notably, it has been held that where a "[t]rial counsel's decision not to request a

charge on manslaughter in the second degree was . . . a strategic one, . . . [it] cannot provide a

basis for claiming ineffective assistance of counsel."  Ramdeo v. Phillips, 2007 WL 1989469,

at *34 (E.D.N.Y. July 9, 2007); see also Rios v. United States, 1992 WL 328931, at *6

(E.D.N.Y. Oct. 13, 1992) (choice to "pursue[] an exculpatory defense . . . practically precludes a

request for an instruction on a lesser included offense") (citations omitted); Colon v. Smith, 723

F. Supp. 1003, 1008 (S.D.N.Y. 1989) ("A failure to request charges on all possible lesser

included offenses may be proper trial strategy.") (citations omitted).  Courts have afforded this

"tactical decision" not to request a lesser included offense charge "substantial deference" and

have acknowledged that introducing a lesser included offenses may be "contrary to the client's

best interests."  Rios, 1992 WL 328931, at *7 (citations omitted).  Of course, whether the

defendant is ultimately convicted of the greater offense is irrelevant to the question of whether

counsel acted ineffectively in choosing to forgo a lesser included offense instruction.  See

generally Domingo v. Greiner, 2002 WL 362761, at *2 (S.D.N.Y. Mar. 5, 2002) ("While with

hindsight, counsel's decision not to seek a lesser included offense charge did not prove

successful, his decision not to give the jury an option that could result in a compromise verdict

was not unreasonable.").

Accordingly, Clarke has not shown that defense counsel's decision fell below an

objective standard of reasonableness under <u>Strickland</u>.  Therefore, it is not necessary to consider the question of whether her conduct caused prejudice.

<u>Conclusion</u>

For the foregoing reasons, the petition should be denied.

**PROCEDURE FOR FILING OBJECTIONS TO THIS
REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days including weekends and holidays from service of this Report and Recommendation to serve and file any objections.  <u>See also</u> Fed. R. Civ. P. 6(a), (b), (d).  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. William H. Pauley, III, and to the undersigned, at 500 Pearl Street, New York, New York 10007.  Any request for an extension of time to file objections must be directed to Judge Pauley.  If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal.  <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.</u>, 596 F.3d 84, 92 (2d Cir. 2010).


Dated: July 9, 2010
       New York, New York


_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

14

Copies to:

Owen Clarke
06-A-2533
Mohawk Correctional Facility
P.O. Box 8451
Rome, NY 13440

Sheila O'Shea
Assistant District Attorney
One Hogan Place
New York, NY 10013

objective standard of reasonableness under <u>Strickland</u>.  Therefore, it is not necessary to consider the question of whether her conduct caused prejudice.

<u>Conclusion</u>

For the foregoing reasons, the petition should be denied.

### PROCEDURE FOR FILING OBJECTIONS TO THIS
### REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days including weekends and holidays from service of this Report and Recommendation to serve and file any objections.  <u>See</u> <u>also</u> Fed. R. Civ. P. 6(a), (b), (d).  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. William H. Pauley, III, and to the undersigned, at 500 Pearl Street, New York, New York 10007.  Any request for an extension of time to file objections must be directed to Judge Pauley.  If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal.  <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.</u>, 596 F.3d 84, 92 (2d Cir. 2010).


Dated:  July 9, 2010
         New York, New York

                                          GABRIEL W. GORENSTEIN
                                          United States Magistrate Judge

14